UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IAN ANTHANY BULANDR,

        Plaintiff,

    v.

J. ROBERTSON, et al.,

        Defendants.

Case No. 19-07942 BLF (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

(Docket No. 29)

Plaintiff, a state prisoner at Pelican Bay State Prison ("PBSP"), filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against PBSP officials and employees. Dkt. No. 1.[1]  Finding the complaint stated cognizable claims, the Court ordered service upon Defendants.  Dkt. No. 8.  Defendants J. Robertson, G. Abdullah, S. Kinney, R. Losacco, and D. Ater[2] filed a motion for summary judgment based on the grounds the undisputed material facts show they did not violate Plaintiff's constitutional rights, failure

---

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

[2] Defendant D. Ater, formerly D. Martinez, legally changed her name on September 13, 2019.  Accordingly, any reference in the papers to Defendant Martinez shall be understood to refer to Defendant Ater.  The Clerk shall also change Defendant D. Martinez's name to "D. Ater" on the docket.

United States District Court
Northern District of California

to exhaust administrative remedies with respect to the claims against Defendant Losacco, and qualified immunity.  Dkt. No. 29.[3]  Plaintiff did not file an opposition although given an opportunity to do so.  However, Plaintiff's complaint is verified and therefore may be treated as an opposing affidavit.[4]  Defendants did not file any further briefing.

      For the reasons discussed below, Defendants' motion is **GRANTED.**

## DISCUSSION

**I.**    **Statement of Facts**[5]

**A.**    **Plaintiff's Allegations**

      This action is based on Plaintiff's claim that Defendants acted with "deliberate indifference" towards his religious needs as a Jewish inmate.  Dkt. No. 1-1 at 1.  In this respect, Plaintiff alleges that to eat a kosher diet and read the teachings in the holy books, such as the Holy Torah, Talmud, and Tanakh, are part of his sincerely held religious beliefs and a key tenet of the Jewish religion.  *Id.* at 4.

      Plaintiff has participated in the prison's "Special Religious Program" since

---

[3] In support of their motion, Defendants provide the declarations from Defendant G. Abdullah, Dkt. No. 29-1, Defendant D. Ater, Dkt. No. 29-2, Defendant S. Kinney, Dkt. No. 29-5, Defendant R. Losacco with exhibits, Dkt. No. 29-6, Defendant J. Robertson, Dkt. No. 29-8, G. Garrett (Acting Prison Canteen Manager at PBSP) with an exhibit, Dkt. No. 29-3, Deputy Attorney General C. Hay-mie with an exhibit containing copies of excerpts from Plaintiff's deposition on December 15, 2020, Dkt. No. 29-4, Howard E. Moseley (Associate Director of the Office of the Appeals (OOA) with exhibits, Dkt. No. 29-7, K. Royal (Inmate Appeals Coordinator at PBSP) with exhibits, Dkt. No. 29-9, and J. Rush (Litigation Coordinator at PBSP) with exhibits, Dkt. No. 29-10.

[4] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

[5] Because no opposition has been filed, the Court accepts Defendants' statement of facts, unless indicated that facts are in dispute with Plaintiff's verified complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

November 4, 2014.  Dkt. No. 1-1 at 4.  On February 9, 2018, Plaintiff was transferred from general population to the administrative segregation unit ("ASU").  *Id.* at 5.  Plaintiff claims that upon his arrival in the ASU, he informed staff that he was on a kosher diet.  *Id.*  However, he did not receive a kosher diet for 23 days, *i.e.*, from February 10 through March 5, 2018.  *Id.*  Plaintiff claims he verbally informed Defendants Kinney and Ater and other officers "at ea. & every meal time from Feb. 10th through Mar. 5th" and that he received various responses: "the kitchen did not send enough kosher meals," "accept reg. diet tray or starve," and "It's not on me… write a 22 to the kitchen, we've already called multiple times… we can only serve ya what we are given."  *Id.* at 6.  On February 17, 2018, he sent an inmate request form (CDCR-22) to Defendant Losacco; Plaintiff did not receive a response.  *Id.* at 7.  On February 22, 2018, Plaintiff sent a CDCR-22 Form to Defendant Abdullah, who responded on March 8, 2018, with a statement, "Okay… Your back on."  *Id.* at 8.

At a later time while in the security housing unit ("SHU"), on June 11, 2018, Plaintiff wrote a CDCR-22 form to Defendant Losacco, requesting religious literature, including the Torah, Talmud, Tanakh, or any type of Jewish literature, scripture, or history. *Id.* at 10.  On June 17, 2018, Defendant Abdullah responded, stating that no such literature was available.  *Id.*  On June 18, 2018, Plaintiff wrote to Defendant Robertson about, among other things, the lack of available religious materials.  *Id.* at 10-11.  On June 25, 2018, Defendant Losacco responded, stating that because of Plaintiff's housing and privilege group, Plaintiff could not attend services, the only religious materials available were those donated by outside religious groups, and if a Jewish organization donated religious materials to PBSP, such materials would be distributed.  *Id.* at 11.  After he was released to general population on February 3, 2019, he learned that the chapel had an "entire library shelf of readily accessible Jewish religious literature."  *Id.* at 12.  Plaintiff claims that general population inmates had access to this material, but Jewish inmates in the ASU and security housing units did not, even upon request.  *Id.*  Plaintiff claims that

unlike their Catholic, Muslim, and Protestant counterparts, Jewish inmates in the ASU and SHU were denied access to religious literature.  *Id.*

Based on the foregoing allegations, the Court found Plaintiff stated cognizable claims under the Free Exercise Clause and Equal Protection Clause.  Dkt. No. 8 at 3-4.

**B.    Kosher Diet**

In 2014, Defendant Abdullah was the Muslim Chaplain at PBSP at the time of the underlying events.  Abdullah Decl. ¶ 1.  Part of his responsibilities included serving as the diet coordinator, reviewing inmates' applications for religious diets, and interviewing them.  *Id.*  Defendant Abdullah reviewed Plaintiff's application for a kosher diet and interviewed him in connection with his application.  *Id.* ¶ 4.  Defendant Abdullah then forwarded Plaintiff's application to the Religious Review committee, which consisted of Defendant Losacco (Community Resources Manager[6]), the other PBSP chaplains, the Associate Warden, and the Warden.  *Id.*; Losacco Decl. ¶ 3.

On November 4, 2014, after the Religious Review Committee approved Plaintiff's application, Defendant Abdullah issued a religious diet chrono and kosher diet card to Plaintiff.  Abdullah Decl. ¶ 4; Cho Decl. ¶ 2, Ex. A at 25:25, 26:1-8, Ex. C to Ex. A; Rush Decl. ¶ 5, Ex. B.  Thereafter, Plaintiff was to receive kosher food provided by an outside vendor, and it was the responsibility of the kitchen, which oversees the feeding of inmates, to ensure Plaintiff was receiving the kosher diet.  Abdullah Decl. ¶ 4; Losacco Decl. ¶ 3.

Plaintiff signed a religious diet program agreement to participate in the kosher diet program on August 11, 2014.  Cho Decl. ¶ 2, Ex. A at 28:9-11, Ex. D to Ex. A; Losacco Decl. ¶ 4; Rush Decl. ¶ 5, Ex. A.  Under this agreement, Plaintiff was not allowed to purchase or consume any food items that were not part of his religious diet.  Cho Decl. ¶ 2, Ex. A at 28:15-18, 31:1-9; Losacco Decl. ¶ 4; Rush Decl. ¶ 5, Ex. A.  Food items

[6] In this role, Defendant Losacco oversees religious services for inmates, donations from outside entities and CDCR staff members, donations from Pelican Bay to outside organizations, chaplains, and meetings for the Inmate Family Council and the Citizens' Advisory Committee.  Losacco Decl. ¶ 1.

prohibited from the kosher diet included pork rinds and sausages, but Plaintiff purchased these items from the canteen on January 25, 2018.  Cho Decl. ¶ 2, Ex. A at 47:23-25, 48:1-10; 49:1-25, 50:1-25, Ex. F to Ex. A; Losacco Decl. ¶ 4; Rush Decl. ¶ 5, Ex. A; Garrett Decl. ¶ 3, Ex. A.

### C.  Placement in the ASU

On February 9, 2018, Plaintiff was housed in the ASU for committing an assault and battery on an inmate with a deadly weapon.  Cho Decl. ¶ 2, Ex. A at 20:19-22, 33:11-13; Rush Decl. ¶ 6, Ex. C.  Upon his arrival, Plaintiff was assigned to Cell 195, in the H section of the building.  Cho Decl. ¶ 2, Ex. A at 36:25, 37:1-6; Kinney Decl. ¶ 3.

Custodial staff in the ASU were calling the kitchen daily during the relevant period because there were regular trays or kosher meals that were missing.  Ater Dec. ¶ 3.  Defendant Ater specifically recalls calling for Plaintiff's kosher meals, which he eventually did receive.  *Id.*  Plaintiff began to receive them on March 5, 2018.  Cho Decl. ¶ 2, Ex. A at 39:19-24.  On March 8, 2018, Defendant Abdullah signed a CDCR-22 form from Plaintiff, who requested that he be given his kosher meals; Defendant Abdullah informed Plaintiff that he was back on the kosher diet.  Abdullah Decl. ¶ 6.

On March 12, 2018, Plaintiff moved to Cell 172 in the F section of the building and was receiving his kosher meals at that time.  Cho Decl. ¶ 2, Ex. A at 39:2-11; Kinney Decl. ¶ 3.  While not involved in feeding Plaintiff while housed in the H section, Defendant Kinney fed Plaintiff after his move to F section on March 12, 13, and 15, 2018.  Kinney Decl. ¶ 3; Cho Decl. ¶ 2, Ex. A at 37:22-25, 38:1-5; Rush Decl. ¶ 7, Ex. D.

### D.  Request for Religious Literature While in the SHU

Beginning on March 26, 2018, Plaintiff was housed in the SHU until he was released to the general population on February 3, 2019.  Cho Decl. ¶ 2, Ex. A at 20:23-25, 21:1-4; Rush Decl. ¶ 6, Ex. C.  On June 18, 2018, Plaintiff submitted a CDCR-22 form addressed to Defendant Robertson, in which he alleged that Jewish inmates in the ASU and SHU were not receiving religious accommodations, including religious materials.

United States District Court
Northern District of California

Losacco Decl. ¶ 9, Ex. A at 1.  On June 25, 2018, Defendant Losacco responded to Plaintiff's request, explaining that under Title 15 of the California Code of Regulations, PBSP was to make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates and that PBSP took an inmate's truly held religious beliefs very seriously.  *Id.* at 3.  Defendant Losacco also explained that due to Plaintiff's housing and privilege group, his access to the chapel and religious gatherings was restricted, and these restrictions affected all inmates in the ASU and SHU, regardless of their faith.  *Id.*  In addition, while housed in the SHU, Plaintiff was entitled to request pastoral care or speak with a chaplain.  *Id.*; Robertson Decl. 4.  He was also allowed to pray in his cell and meditate.  Cho Decl. ¶ 2, Ex. A at 25:11; Losacco Decl. ¶ 9.

Inmates who desire religious literature must purchase it.  Losacco Decl. ¶ 7.  However, PBSP will provide donated material to inmates upon request, regardless of their housing.  *Id.*  For example, Catholic, Muslim and Protestant inmates in the ASU and SHU received Bibles upon request because a large supply of Bibles was available.  Cho Decl. ¶ 2, Ex. A at 56:12-17, 20-25, 57:1-20; Losacco Decl. ¶ 8.  PBSP will also provide donated Jewish literature to inmates upon request, but the literature Plaintiff sought, especially the Torah and Tanakh, was not regularly available to Jewish inmates because they were rarely donated due to their costs.  Losacco Decl. ¶ 7; Abdullah Decl. ¶ 7.

Furthermore, PBSP chapel does have an entire shelf of Jewish literature, including a small number of Torahs.  Abdullah Decl. ¶ 8.  However, inmates, regardless of religion or faith, while housed in either the ASU or SHU are not allowed to access the chapel because it is located at another facility and inmate movement is restricted for safety and security reasons.  Abdullah Decl. ¶ 8; Robertson Decl. ¶ 4.  Specifically, inmates are housed in the SHU because they may have enemy concerns, are part of security threat groups, have committed violent acts against other inmates, have threatened staff, or have introduced large quantities of contraband, such as controlled substances or inmate-manufactured weapons, into the institution.  Robertson Decl. ¶ 4.  Therefore, an inmate housed in the

United States District Court
Northern District of California

ASU or SHU may request religious literature be brought to him, and if the material and chaplain are available, then a chaplain can deliver the literature to the inmate. *Id.*; Abdullah Decl. ¶ 8; Cho Decl. ¶ 2, Ex. A at 58:16-23. Otherwise, for inmates who have access to the chapel, the Jewish literature in the chapel must remain in the chapel for safety and security reasons, e.g., to prevent inmates from concealing contraband in the literature. Losacco Decl. ¶ 7.

### E.   Administrative Grievance

According to evidence submitted by Defendants, Plaintiff submitted a total of 26 administrative grievances at PBSP. Royal Decl. ¶ 7, Ex. B. There was only one grievance pertaining to Plaintiff's allegations about not receiving a kosher meal during the relevant time period. *Id.* ¶ 8. That grievance was filed on March 4, 2018, and assigned Log No. PBSP-C-18-00705. *Id.*, Exs. B, C; Moseley Decl. ¶ 8, Exs. A, B. Plaintiff alleged that he had been in the ASU for 23 days without kosher meals, despite possessing a chrono for a kosher diet. Cho Decl. ¶ 2, Ex. A at 62:25. 63:1, Ex. G to Ex. A; Royal Decl., Ex. C; Moseley Decl. ¶ 8, Ex. B. He also alleged that he had written to both kitchen staff and Defendant Abdullah to voice his needs but to no avail, and that Defendants Kinney and Ater, as well as kitchen staff, refused to provide him with already-approved kosher meals. *Id.* Plaintiff made no reference to Defendant Losacco in this grievance. *Id.*

The grievance bypassed the first level of review. Royal Decl. ¶ 9, Ex. C at 1. On April 16, 2018, the second-level reviewed granted Plaintiff's request to be placed on a kosher diet, but denied his demands to have staff retrained, suspended, or terminated and for monetary compensation. *Id.* at 14-15. Plaintiff appealed the grievance to the third level of review, which denied the appeal on January 11, 2019. Moseley Decl. ¶ 8, Ex. C.

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment

7

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the

United States District Court
Northern District of California

nonmoving party. *See id.* at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007).  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

United States District Court
Northern District of California

define the boundaries of proper exhaustion.  *Id*. at 218.  In California,[7] the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'"  *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer).  California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).

Nonexhaustion under § 1997e(a) is an affirmative defense.  *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  *Id.* at 215-17.  Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  *Id.* at 1166.  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding.  *Id.* The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy.  *Id.* at 1172; *see id.* at 1176 (reversing district court's grant of summary judgment to defendants on issue of

---

[7] The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  *See id.* § 3084.1(e).  Under the regulations at the time of these events, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee.  *Id.* § 3084.7.

exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust).  Once the defendant has carried that burden, the prisoner has the burden of production.  *Id.*  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id.*  But as required by *Jones*, the ultimate burden of proof remains with the defendant.  *Id.*

Defendants assert Plaintiff did not exhaust his free exercise claim against Defendant Losacco based on the denial of kosher meals.  Dkt. No. 29 at 19-20.  Defendants point out that inmates are required to list all staff member(s) involved and describe their involvement in the issue in their grievance.  *Id.* at 20, citing Cal. Code Regs., tit. 15 § 3084.2(a)(3).  To assist in the identification of staff members, the inmate shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  *Id.*  If the inmate does not have the requested identifying information about the staff member(s), s/he shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.  *Id.*

Here, Plaintiff filed one inmate grievance, Log No. PBSP-18-00705, regarding the denial of his kosher meals for 23 days while in the ASU, but failed to name or identify Defendant Losacco, who is the Community Resources Manager, in the grievance.  *See supra* at 6.  Although he sent a CDCR-22 form to Defendant Losacco about the non-receipt of kosher meals, and therefore clearly knew this particular Defendant's name and position, Plaintiff failed to include this Defendant in the inmate grievance.  Accordingly, it cannot be said that grievance Log No. PBSP-18-00705 provided sufficient notice to PBSP of Plaintiff's intention to pursue a free-exercise claim against Defendant Losacco such that Plaintiff exhausted this claim.  *See, e.g., Stephen v. Alvarez*, 2016 WL 312142, *6 (N.D. Cal. June 7, 2016) (inmate's staff complaint against one nurse did not exhaust medical care

11

against others whom he did not identify, reference by title, or state that other unknown persons denied him medical care); *Wallace v. Ducart*, 2018 WL 4053485, at *12 (N.D. Cal. August 24, 2018) (inmate's grievance against one officer did not exhaust claims against other prison officials who were not mentioned by name, title, or nature of involvement).  Plaintiff has filed no opposition in response, showing otherwise.

Based on the foregoing, Defendants have shown that Plaintiff failed to properly exhaust all available administrative remedies with respect to his free-exercise claim against Defendant Losacco.  In response, having failed to file an opposition, Plaintiff has failed to show that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *See Albino*, 747 F.3d at 1172.  Accordingly, Defendant Losacco is entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies with respect to the free-exercise claim against him based on the denial of kosher meals for 23 days.  *Id*.

### B.    First Amendment – Free Exercise of Religion Claim

Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted).  But lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citation and internal quotation marks omitted).  For a prisoner to establish a free exercise violation, he therefore must show that a prison regulation or official burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85.  Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.* (finding district court impermissibly focused on

12

whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns.  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

### 1.  Kosher Meals

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs.  *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (Jewish inmate claiming denial of kosher diet), *cert. denied*, 510 U.S. 1192 (1994); *McElyea*, 833 F.2d at 198 (same); *Moorish Science Temple, Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim inmate claiming denial of proper religious diet).  The burden then falls on the prison officials to prove that the burden on plaintiff's exercise of religion was reasonably related to a legitimate penological objective.  *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997) (applying test from *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), to determine reasonableness of decision denying Jewish inmate's request for an all-kosher diet).

Defendants assert that Plaintiff cannot establish that their alleged conduct substantially burdened the practice of his religion even if it were assumed that he was denied kosher meals for 23 days.  Dkt. No. 29 at 16.  They assert that Plaintiff has not demonstrated that Defendants substantially burdened his religious practice.  *Id.* Furthermore, Defendant Kinney fed Plaintiff on March 12, 13, and 15, 2018, after Plaintiff had moved into Cell 172 on March 12, 2018, and was already receiving kosher meals. Kinney Decl. ¶ 3; Cho Decl. ¶ 2, Ex. A at 39:2-9; Rush Decl. ¶ 6, Ex. C.  Therefore,

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Kinney had no role in denying Plaintiff his kosher meals.  *Id.*  At most, Defendants assert, the denial of kosher meals was merely temporary and an "inconvenience on religious exercise" that does not rise to the level of a substantial burden on Plaintiff's religious practice.  *Id.*, citing *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (finding that "short-term" and "sporadic" interference with plaintiff's ability to practice his religious does not meet the standard for "substantially burdening" religious practice).  Plaintiff has filed no opposition to refute Defendants' assertions.

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact with respect to Plaintiff's claim regarding the denial of kosher meals for 23 days.  *See Celotex Corp.*, 477 U.S. at 323.  Although Defendants attempt to attack the sincerity of Plaintiff's religious beliefs with regards to his diet, Dkt. No. 29 at 17, it is unnecessary to do so.  Firstly, there is simply no evidence that Defendants Abdullah, Kinney, and Ater refused to provide Plaintiff with a healthy diet that conformed to his sincere religious beliefs.  *See Ward*, 1 F.3d at 877.  Rather, the undisputed evidence shows that it was kitchen staff, rather than Defendants, who was responsible for the failure to provide Plaintiff with his kosher meals.  Plaintiff originally alleged in his inmate grievance on the issue that he consistently asked the unit staff about his kosher meals and "they have been very accommodating, but *kitchen staff* have refused to comply with religious dietary needs."  Dkt. No. 1-2 at 3 (emphasis added).  This statement is consistent with Defendant Ater's declaration wherein she states that custodial staff were frequently calling the kitchen about missing meals, and that she also called the kitchen for Plaintiff's kosher meals.  *See supra* at 5.  Defendants Abdullah and Losacco also state that it is the responsibility of the kitchen, which oversees the feeding of the inmates, to ensure Plaintiff was receiving his kosher meals.  *Id.* at 4.  Furthermore, once Defendants became aware of the problem, like Defendant Ater, they

attempted to remedy the situation.[8]  For example, Defendant Abdullah was initially unaware that Plaintiff was transferred to ASU on February 9, 2018, but once he became aware through CDCR-Form 22 that Plaintiff was not receiving his kosher meals, Defendant Abdullah acted to rectify the matter as indicated by his March 8, 2018 response to Plaintiff's CDCR-22 form.  Abdullah Decl. ¶ 6; Ater Decl. ¶ 3; Cho Decl. ¶ 2, Ex. A at 39:19-24.  By that time, Plaintiff was already receiving his kosher meals.  *See supra* at 5. The undisputed evidence also shows that Defendant Kinney had no role in denying Plaintiff his kosher meals during the 23 days at issue.  *Id.* at 5.

The burden then shifts to Plaintiff to identify specific facts showing that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  However, Plaintiff has filed no opposition in response to Defendants' motion and has therefore failed to identify any evidence that precludes summary judgment.

Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to the denial of kosher meals for 23 days.  *See Celotex Corp.*, 477 U.S. at 323.  Accordingly, Defendants Abdullah, Kinney, and Ater are entitled to summary judgment on this claim.

## 2.  Religious Literature

Plaintiff also claims that Defendants Abdullah, Robertson, and Losacco violated his free-exercise rights by depriving him of religious literature while he was housed in the SHU.  *See supra* at 3-4.

Defendants assert that Plaintiff has not shown they imposed a substantial burden on Plaintiff's exercise of Judaism.  Dkt. No. 29 at 17.  Defendants assert that there is no evidence that they intentionally withheld religious literature from him, as the specific literature he sought, including the Torah and Tanakh, were unavailable as rarely donated.

---

[8] Although Plaintiff failed to exhaust this claim against Defendant Losacco, the evidence shows that Defendant Losacco also believed Plaintiff was receiving his kosher meals during the period in question as indicated by the prison's "meal tracking system."  *See* Losacco Decl. ¶ 5.

United States District Court
Northern District of California

*Id.*; Abdullah Decl. ¶ 7; Losacco Decl. ¶7.  Also, inmates in the SHU were not permitted to access the chapel, where a limited number of Torahs were available, because inmate movement was restricted for security and safety reasons.  Abdullah Decl. ¶ 8; Robertson Decl. ¶ 4.  Namely, inmates were housed in the SHU due to enemy concerns, participation in security threat groups, commission of violent acts against other inmates, threats against staff, or involvement in contraband, such as controlled substances or inmate-manufactured weapons.  Robertson Decl. ¶ 4.  Additionally, literature in the chapel could not be removed because inmates could possibly be concealing contraband in that literature.  Losacco Decl. ¶ 7.  Furthermore, while in the SHU, Plaintiff was entitled to request literature be brought to him if available, seek pastoral care, and speak with a chaplain.  Abdullah Decl. ¶ 8; Cho Decl. ¶ 2, Ex. A at 25:11, 58:16-23; Losacco Decl. ¶ 9; Robertson Decl. ¶ 4.  Lastly, Plaintiff was also permitted to pray and meditate in his cell.  *Id.*  Defendants assert that the facts show that at most, the lack of religious literature amounts to a minimal inconvenience to the practice of Plaintiff's religion, and he has not demonstrated any harm inflicted upon his religious beliefs.  Dkt. No. 29 at 18.

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact with respect to this claim.  *See Celotex Corp.*, 477 U.S. at 323.  As Defendants have shown, there is simply no evidence that Defendants refused to provide Plaintiff with the religious material he sought.  As their submitted evidence shows, inmates who desire religious literature must purchase it, but if there are donated religious material, it will be provided to inmates regardless of their housing.  *See supra* at 6.  However, the Jewish literature that Plaintiff sought was not available for individual distribution because that material was rarely donated.  *Id.*  Although several copies were available in the chapel, Plaintiff was not permitted access as a SHU inmate due to safety and security reasons.  A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate

16

1  penological interests.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting

2  *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see e.g.*, *Anderson v. Angelone*, 123 F.3d 1197,

3  1198 (9th Cir. 1997) (finding legitimate penological interest for regulation prohibiting

4  inmate-led religious activities where state contended that the regulation addressed

5  legitimate security concerns that inmate-led religious services could be a cover for

6  unlawful activity and that an inmate leading religious services could inflame or unduly

7  influence other prisoners).  Defendants have shown that the restricted access to the chapel

8  by SHU inmates is reasonably related to the prison's legitimate penological interest in the

9  safety and security of the institution.  Furthermore, Plaintiff could have requested a copy

10  be brought to him by a chaplain if available.  Abdullah Decl. ¶ 8.  However, there is no

11  allegation that Plaintiff made such a request to a chaplain and that it was unreasonably

12  denied.  Rather, Plaintiff alleges that he wanted the prison to provide him with Jewish

13  literature for his personal use, but the evidence submitted by Defendants show that no such

14  donated material was available for distribution.

15  Moreover, Plaintiff fails to show that the lack of religious literature burdened the

16  practice of his religion.  Specifically, there is no allegation in the complaint that he was

17  unable to practice Judaism for lack of this material.  Rather, Defendants have shown that

18  Plaintiff had other means of practicing his religion, e.g., requesting literature be brought to

19  him by a chaplain if available, speaking with a chaplain, as well as prayer and meditation

20  in his cell.  *See supra* at 16.  In response, Plaintiff has filed no opposition showing that

21  there is a genuine issue for trial or identifying any evidence that precludes summary

22  judgment.  *Celotex Corp.*, 477 U.S. at 324.

23  Based on the foregoing, the Court finds summary judgment is appropriate because

24  there are no genuine issues of material facts with respect to the denial of religious

25  literature.  *See Celotex Corp.*, 477 U.S. at 323.  Accordingly, Defendants Abdullah,

26  Robertson, and Losacco are entitled to summary judgment on this claim.

27  ///

28

### C.   Equal Protection Claim

Plaintiff claims that his right to equal protection was violated because he was denied Jewish literature while in the SHU while his Catholic, Muslim, and Protestant counterparts in the same unit received religious literature.  Dkt. No. 1-1 at 12.  He also claims that equal protection was violated because Jewish inmates in general population had access to Jewish literature in the chapel while Jewish inmates in the SHU did not.  *Id.*

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).  The court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated equal protection clause by providing only Jewish inmates with kosher meat diet and remanding claim so record could be more fully developed regarding defendants' asserted penological interests).

An inmate "'must set forth specific facts showing a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85.  *See, e.g.*, *Hartman v. California Dep't of Corrections*, 707 F.3d 1114, 1124 (9th Cir. 2013) (affirming dismissal of equal protection claim based on denial of request for a paid Wiccan chaplain where pleadings suggested a reasoned and vetted denial

18

– paid Wiccan chaplain not necessary because a volunteer Wiccan chaplain provides services at prison and staff chaplains are available to provide inmates with religious assistance – rather than discriminatory intent).

Defendants assert that Plaintiff fails to establish an equal protection claim. Dkt. No. 29 at 19. They assert that Catholic, Muslim, and Protestant inmates in the SHU receive Bibles upon request because a large supply of Bibles was available. *Id.*; Losacco Decl. ¶ 8. But the institution did not have Plaintiff's requested literature available. Abdullah Decl. ¶ 7; Losacco Decl. ¶ 7. Defendants assert that there is also no evidence that Defendants Robertson, Abdullah, and Losacco deliberately provided literature to inmates of other faiths housed in the SHU while disregarding Plaintiff because he was Jewish. Additionally, Plaintiff was allowed to have a chaplain come see him, seek pastoral care, and pray and mediate in his cell, which indicates that Defendants attempted to accommodate Plaintiff's religious needs while in the SHU. Losacco Decl. ¶ 9; Robertson Decl. ¶ 4. Lastly, Defendants assert that Plaintiff was not subject to different treatment compared to others similarly situated because no inmate in the SHU was authorized to access the chapel for safety and security reasons. Robertson Decl. ¶ 4. If donated material had been available, Plaintiff would have been entitled to request that such material be brought to him. Abdullah Decl. ¶ 8; Robertson Decl. ¶ 4. Plaintiff has filed no opposition in response.

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact with respect to this claim. *See Celotex Corp.*, 477 U.S. at 323. There is no evidence that Plaintiff, as a Jewish inmate, was not afforded a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners of other religions. Plaintiff takes issue with the fact that Catholics, Muslims, and Protestants are provided with Bibles, while he was not provided with any Jewish material. But Defendants have provided evidence showing that

United States District Court
Northern District of California

the availability of free religious literature to inmates was based solely on donations. *See supra* at 6. Because there was a large supply of donated Bibles, these were readily available to inmates of various religions. However, Jewish literature, such as the Torah and Tanakh, were not regularly available because they were rarely donated. *Id.* If such literature had been available, Plaintiff would have been provided with it even while in the SHU. *Id.* Accordingly, there is no evidence that Defendants acted in a discriminatory manner with respect to the availability of religious literature. *See Freeman*, 125 F.3d at 737.

Nor is there any merit to Plaintiff's claim that he was unfairly treated as a Jewish inmate in the SHU as compared to Jewish inmates in the general population because of the difference in access to the chapel. As Defendants have shown, Plaintiff was not subject to different treatment compared to other similarly situated because <u>no</u> inmate in the SHU had access to the SHU for safety and security reasons. *See supra* at 19. Lastly, any difference in treatment from Jewish inmates in general population was reasonably related to legitimate penological interests, *i.e.*, the safety and security of the prison. *Id.* at 6; *Shakur*, 514 F.3d at 891.

In response, Plaintiff has filed no opposition showing that there is a genuine issue for trial or identifying any evidence that precludes summary judgment. *Celotex Corp.*, 477 U.S. at 324.

Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to this equal protection claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are entitled to summary judgment on this claim.

**CONCLUSION**

For the reasons stated above, Defendants J. Robertson, G. Abdullah, S. Kinney, R. Losacco, and D. Ater's motion for summary judgment is **GRANTED**. Dkt. No. 29. The

20

1    Free Exercise and Equal Protection claims against them are **DISMISSED with prejudice**.[9]

2          The Clerk shall change Defendant D. Martinez's name to "D. Ater" on the docket.

3    *See supra* at 1, fn. 2.

4          This order terminates Docket No. 29.

5          **IT IS SO ORDERED.**

6    **Dated:  __September 1, 2021____**

7                                                              BETH LABSON FREEMAN
                                                              United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.19\07942Bulandr_grant-MSJ

---

[9] Because the Court finds no constitutional violation occurred, it is not necessary to discuss Defendants' qualified immunity argument.  Because the claims are dismissed in their entirety, it is also unnecessary to discuss Defendants' arguments regarding Plaintiff's claim for punitive damages, Eleventh Amendment immunity, and declaratory relief.

21

United States District Court
Northern District of California